UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

STEPHEN BUSHANSKY,

                Plaintiff,

         v.

WPX ENERGY, INC., KIMBERLY S.
LUBEL, JOHN A. CARRIG, DAVID F.
WORK, ROBERT K. HERDMAN, KELT
KINDICK, KARL F. KURZ, HENRY E.
LENTZ, VALERIE M. WILLIAMS,
RICHARD E. MUNCRIEF, and CLAY M.
GASPAR,

                Defendants.

---------------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against WPX Energy, Inc. ("WPX" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on the Company's proposed acquisition of Felix Energy Holdings II, LLC ("Felix") through its affiliate Felix Investments Holdings II, LLC ("Felix Parent") (the "Proposed Transaction").

2.      On December 15, 2019, WPX issued a press release announcing that it had entered into a Securities Purchase Agreement dated December 15, 2019 (the "Merger Agreement") to acquire Felix.  Under the terms of the Merger Agreement, WPX will purchase 100% of the issued and outstanding membership interests in Felix for $2.5 billion, consisting of: (i) $900 million in cash; and (ii) 152,963,671 shares of Company common stock ("Merger Consideration").

3.      On February 5, 2020, WPX filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that WPX stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) WPX management's and Felix's financial projections, relied upon by the Company's financial advisor, Tudor Pickering Holt & Co. Advisors LP ("TPH"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by TPH; (iii) TPH's and the Company's additional financial advisor, Barclays Capital Inc.'s ("Barclays"), potential conflicts of interest; and (iv) the background of the Proposed Transaction.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, WPX's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  WPX's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of WPX.

9.      Defendant WPX is a Delaware corporation, with its principal executive offices located at 3500 One Williams Center, Tulsa, Oklahoma 74172.  The Company is an independent energy producer with core positions in the Permian and Williston basins.  WPX's common stock trades on the New York Stock Exchange under the ticker symbol "WPX."

10.      Defendant Kimberly S. Lubel ("Lubel") has been a director of the Company since December 2011.

11.      Defendant John A. Carrig ("Carrig") has been a director of the Company since December 2011.

12.      Defendant David F. Work ("Work") has been a director of the Company since December 2011.

13.     Defendant Robert K. Herdman ("Herdman") has been a director of the Company since December 2011.

14.     Defendant Kelt Kindick ("Kindick") has been a director of the Company since January 2013 and independent Lead Director since May 2018.

15.     Defendant Karl F. Kurz ("Kurz") has been a director of the Company since January 2014.

16.     Defendant Henry E. Lentz ("Lentz") has been a director of the Company since December 2011.

17.     Defendant Valerie M. Williams ("Williams") has been a director of the Company since March 2018.

18.     Defendant Richard E. Muncrief ("Muncrief") has been Chief Executive Officer ("CEO") and a director of the Company since May 2014 and Chairman of the Board since January 2017.

19.     Defendant Clay M. Gaspar ("Gaspar") has been President of the Company since 2017, Chief Operating Officer ("COO") of the Company since 2015, and a director of the Company since 2019.

20.     Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.     Felix is an exploration and production company based in Denver, Colorado, focusing on the development of oil and gas reserves in the Delaware Basin, with core operations located in Loving, Reeves, Ward and Winkler Counties in West Texas.

22.     Felix Parent is a holding company, affiliated with EnCap Energy Capital Fund X, L.P. and members of Felix's management team, formed to make investments in, and own equity interests of, Felix.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and Proposed Transaction**

23.     Incorporated in 2011, WPX is an independent oil and natural gas exploration and production company engaged in the exploitation and development of long-life unconventional properties.  The Company is focused on exploiting, developing and growing its oil positions in the Delaware Basin in Texas and New Mexico and the Williston Basin in North Dakota.  As of December 31, 2018, the Company's proved reserves were 479 million barrels of oil equivalent ("MMboe"), reflecting a mix of 61% crude oil, 21% natural gas, and 18% natural gas liquids ("NGLs").

24.     On October 30, 2019, WPX issued a press release announcing its third quarter 2019 financial results.  The Company reported third-quarter oil volumes of 108,600 barrels per day, a 30% increase from the third quarter 2018, adjusted EBITDAX of $352 million, a 22% increase from $288 million in the third quarter 2018, and cash flow from operations, inclusive of hedge impact, of $272 million, up 21% from $224 million in the third quarter 2018.  Defendant Muncrief commented on the strong financial results, stating:

> We generated free cash flow in the quarter, are returning capital to shareholders ahead of schedule and are applying our technical expertise to lower costs and raise margins on barrels produced . . . All of this contributes to an exceptional outlook for the fourth quarter, 2020 and beyond, especially with improved capital efficiency, greater gas capture, lower interest expense and how we're working to drive our leverage even lower.

25.     On December 16, 2019, WPX issued a press release announcing the Proposed Transaction.  The press release states, in relevant part:

TULSA, Okla.--WPX Energy (NYSE:WPX) is taking another significant step in its commitment to delivering shareholder value with the $2.5 billion purchase of Felix Energy, one of the highest quality Delaware Basin operators.

Felix has approximately 1,500 gross undeveloped locations in the eastern portion of the basin, with expected production of approximately 60 MBoe/d (70% oil) at the time of anticipated closing.

WPX plans to implement a dividend post-closing, targeting approximately $0.10 per share on an annualized basis at initiation.

The acquisition and dividend program follow other steps WPX took in 2019 to enhance its value proposition, including reducing net debt, executing attractive midstream monetizations, launching a share buyback program and generating free cash flow.

The purchase price consists of $900 million cash, subject to closing adjustments, and $1.6 billion in WPX stock issued to the seller. WPX plans to fund the cash portion through issuance of $900 million of senior notes on an opportunistic basis. WPX also has obtained committed financing from Barclays in connection with the transaction and has full access to a $1.5 billion revolving credit facility.

The stock consideration comprises approximately 153 million WPX shares, which is based on the 10-day volume-weighted average price as of Dec. 13, 2019. The transaction is subject to customary closing conditions and approval by WPX shareholders.

The parties anticipate closing the transaction early in the second quarter of 2020. WPX's board unanimously approved the transaction.

**STRATEGIC RATIONALE & TRANSACTION BENEFITS**

The acquisition is consistent with all of the tenets in WPX's five-year vision for shareholders that the company introduced in November during its third-quarter report.

"Meeting the five-year targets we communicated is the absolute standard and benchmark for any investment we make," said WPX Chairman and Chief Executive Officer Rick Muncrief.

"Now we can accomplish these objectives for shareholders more quickly and efficiently with the irrefutable benefits of the Felix transaction.

"Delivering on our plan ahead of schedule in a highly de-risked, leverage-neutral manner is consistent with our opportunistic approach," Muncrief added.

On a pro forma basis, WPX expects to generate significant free cash flow in 2020 at $50 oil. Following the acquisition, cash flow per share, earnings per share, free cash flow per share, return on capital employed, and cash margins are all expected to increase.

WPX also expects to continue its opportunistic share buybacks, to implement the previously mentioned dividend program, and to reduce its leverage to 1.0x by year-end 2021.

WPX based all of its transaction economics on $50 oil, with no assumptions for improvements in development costs or operating efficiencies. However, WPX believes significant upside exists by capturing synergies associated with scale.

**The Proxy Statement Contains Material Misstatements or Omissions**

28.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to WPX's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) WPX management's and Felix's financial projections, relied upon by the Company's financial advisor TPH in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by TPH; (iii) TPH's and Barclays' potential conflicts of interest; and (iv) the background of the Proposed Transaction.

***Material Omissions Concerning WPX's and Felix's Financial Projections***

30.     The Proxy Statement omits material information regarding the Company's and Felix's financial projections provided by WPX's management and relied upon by TPH for its financial analyses.

31.     For example, in connection with performing its *Net Asset Value Analysis*, *Discounted Cash Flow Analysis* and *Has/Gets Company Pro Forma Net Asset Value Analysis*,

TPH utilized the Company's and Felix's unlevered free cash flows ("UFCFs").  Proxy Statement at 93-4.  The Proxy Statement, however, fails to disclose the Company's and Felix's UFCFs and the line items underlying the Company's and Felix's UFCFs.

32.    Additionally, with respect to the Company's projections the Proxy Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA and (b) free cash flow; and (ii) EBITDA.

33.    The omission of this information renders the statements in the "Certain Company Projected Financial Information" and "Opinion of the Company's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning TPH's Financial Analyses***

34.    The Proxy Statement describes TPH's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of TPH's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, WPX's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on TPH's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

35.    With respect to TPH's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual financial metrics and multiples observed for each of the selected transactions.

36.    With respect to TPH's *Net Asset Value Analysis*, the Proxy Statement fails to disclose for the Company: (i) the cash flows generated by the estimated proved developed reserves and undeveloped hydrocarbons; (ii) the value of the Company's Permian midstream assets; (iii) estimated effects of hedging; (iv) estimated effects of non-drilling and completion capital

expenditures; (v) general administrative expenses and taxes; (vi) net debt; and (vii) quantification of the inputs and assumptions underlying the discount rate range of 8.0% to 11.0%.

37.     With respect to TPH's *Net Asset Value Analysis*, the Proxy Statement fails to disclose for Felix: (i) the cash flows generated by the estimated proved developed reserves, drilled but uncompleted wells and undeveloped hydrocarbon resources; (ii) estimated effects of general and administrative expenses and taxes; (iii) net debt; and (iv) quantification of the inputs and assumptions underlying the discount rate range of 9.00% to 11.50%.

38.     With respect to TPH's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the standalone unlevered free cash flows for each of WPX and Felix; (ii) quantification of the inputs and assumptions underlying the discount rate ranges of 9.00% to 11.50% for Felix and 8.0% to 11.0% for the Company; and (iii) the Company's net debt.

39.     With respect to TPH's *Has/Gets Company Pro Forma Net Asset Value Analysis*, the Proxy Statement fails to disclose: (i) the cash flows generated by the pro forma estimated proved developed reserves and undeveloped hydrocarbon resources; (ii) the Company's Permian midstream assets; (iii) the pro forma future estimated effects of hedging; (iv) the pro forma future estimated effects of non-drilling and completion capital expenditures; (v) general administrative expenses and taxes; (vi) pro forma net debt; and (vii) quantification of the inputs and assumptions underlying the discount rate range of 8.0% to 11.0%

40.     The omission of this information renders the statements in the "Opinion of the Company's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning TPH's and Barclays' Potential Conflicts of Interest***

41.     The Proxy Statement omits material information regarding potential conflicts of interest of TPH.

42.     Specifically, the Proxy Statement fails to disclose the amount of compensation TPH has received or will receive for "providing financial advisory services to known controlled portfolio companies of EnCap Investments L.P." *Id.* at 96.

43.     Additionally, the Proxy Statement fails to disclose details of the Company's engagement with its co-financial advisor, Barclays, including: (i) the compensation Barclays received or will receive in connection with its engagement and participation in the financing of the Proposed Transaction; (ii) the amount of Barclays' compensation that is contingent on the consummation of the Proposed Transaction; and (iii) the past services and amount of compensation received by Barclays for past services provided to any parties to the Merger Agreement, EnCap Investments L.P. or each of their affiliates.

44.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

45.     The omission of this information renders the statements in the "Opinion of the Company's Financial Advisor" and "Background of the Acquisition" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

46.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

47.     For example, the Proxy Statement fails to disclose the specific terms and value of the December 13, 2019 indication of interest submitted by the party identified in the Proxy Statement as the "energy company."

48.     Additionally, the Proxy Statement fails to disclose whether WPX entered into any confidentiality agreements with parties other than Felix, and the specific terms of such agreements.

49.     The omission of this information renders the statements in the "Background of the Acquisition" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

50.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other WPX stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

26.     Plaintiff repeats all previous allegations as if set forth in full.

27.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

28.     By virtue of their positions within the Company, the defendants were aware of this

information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about WPX management's and Felix's financial projections, relied upon by the Company's financial advisor TPH in its financial analyses, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by TPH, TPH's and Barclays' potential conflicts of interest, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

29.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

30.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

31.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

32.     Plaintiff repeats all previous allegations as if set forth in full.

33.     The Individual Defendants acted as controlling persons of WPX within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of WPX, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the

SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

34.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

35.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

36.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

37.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

38.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act.  As a direct and proximate result of defendants' conduct, WPX's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of WPX, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to WPX stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  February 19, 2020

WEISSLAW LLP

By

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*